JUDGE CASTEL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**'08 CIV 6514**

--------------------------------------------------------------X

BRUNEL SHIPPING CO.,

      Plaintiff,

  - against -

PT SAMUDRA SRIWIJAYA SUKSESINDO,

      Defendant.

--------------------------------------------------------------X

08 Civ.

ECF CASE

RECEIVED
JUL 2 2 2008
U.S.D.C. S.D.N.Y.
CASHIERS

### <u>VERIFIED COMPLAINT</u>

  Plaintiff, BRUNEL SHIPPING CO. (hereafter referred to as "Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the Defendant, PT SAMUDRA SRIWIJAYA SUKSESINDO (hereinafter referred to as "Defendant"), alleges, upon information and belief, as follows:

  1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. This matter also arises under the Court's federal question jurisdiction within the meaning of 28 United States § 1331 and the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (9 U.S.C. § 201 *et seq.*) and/or the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*).

  2. At all times material to this action, Plaintiff was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of the laws of Liberia.

  3. At all material times to this action, Plaintiff was the owner of the motor vessel "LIQUID SUCCESS" (hereinafter the "Vessel").

  4. Upon information and belief, Defendant was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law.

5.      Pursuant to a fixture for a charter party contract dated April 14, 2008 ("Charter Party"), Plaintiff chartered the Vessel to Defendant for the carriage of palm oil products ("the cargo") for the short voyage between one safe port/berth in Batam, Indonesia and one safe port in Zhanjiang, China.

6.      The Charter Party provided demurrage was to accrue at $14,000 per day/prorata

7.      In accordance with the Charter Party, the Vessel arrived at the load port, Batam, at 12:36 p.m. on April 18, 2008 and tendered its Notice of Readiness to Defendant.

8.      However, Defendant failed to provide the cargo for loading and/or details with respect to loading in the future.

9.      As Defendant was aware, demurrage charges began to accrue at 8:30 p.m. on April 23, 2008.

10.     By April 26, 2008, the Charter Party cancelling date, Defendant had still failed to provide any loading instructions or information concerning cargo readiness, ignoring repeated requests from Plaintiff.

11.     On May 6, 2008, Plaintiff informed Defendant that unless a schedule was provided before May 7, 2008, Plaintiff would have no alternative but to have the Vessel sail from Batam, Indonesia.

12.     Defendant failed to respond to Plaintiff's communication.

13.     Thus, on Plaintiff's direction, the Vessel sailed from Batam at 5:30 a.m. on May 7, 2008.

14.     Defendant's conduct in failing to make the cargo available for loading at Batam and/or in failing to perform the charter within such time that would not frustrate the commercial

purpose of the Charter Party constitutes a repudiatory and/or renunciatory breach of the Defendant's obligations under that contract.

15.     Plaintiff clearly and unequivocally accepted Defendant's repudiatory and/or renunciatory breach on or about May 7, 2008 by having the Vessel leave Batam.

16.     Plaintiff further sent written confirmation of its acceptance of Defendant's repudiatory and/or renunciatory breach on or about June 1, 2008.

17.     As a result of Defendant's repudiatory and/or renunciatory breach of the Charter Party as set forth below, Plaintiff has and will continue to suffer damages in the principal amount of $335,474.00, exclusive of interest, arbitration costs and attorney's fees.

18.     While waiting for Defendant's instructions from April 23, 2008 at 8:30 p.m. to May 7, 2008 at 5:20 a.m., when Plaintiff left Batam, demurrage charges accrued for Defendant's account in the amount of $187,152.78.

19.     In addition to load port demurrage, Plaintiff incurred damages for lost earnings. That is, the difference between the net freight Plaintiff would have earned during the period of the Charter Party with Defendant, had it properly performed instead of repudiated on May 7, 2008, and the net freight actually earned during that same period under a mitigation or substitute charter party.

20.     Had the Defendant not repudiated the Charter Party and/or had the Defendant properly performed from 5:30 a.m. on May 7, 2008, the Vessel would have been employed up to 8:00 a.m. on May 19, 2008.

21.     In particularly, under the Charter Party with Defendant, Plaintiff would have earned (net) freight of $190,074.00 for the period running from 5:30 a.m. on May 7, 2008 (the

time the Vessel left Batam) to 8:00 a.m. on May 19, 2008 (the date the charter would have ended).

21.    Instead, after sailing for Batam, the Vessel was ballasted to Singapore awaiting orders, and eventually was fixed for substitute employment with another company, non-party Pacific Inter-Link.

22.    The Vessel earned nothing until 1:30 a.m. on May 15, 2008, when the substitute charter began, and then earned (net) freight of $265,229 over a 27 day period to June 11, 2008.

23.    Starting at 1:30 a.m. on May 15, 2008, under the substitute charter party, the Vessel therefore earned time charter hire equivalent earnings of $9,788.00 per day for the 4.27 period to 8:00 a.m. on May 19, 2008, when the Vessel would have otherwise completed the charter with Defendant   Thus, Plaintiff earned a total of $41,794.76 during the 4.27 day period under the substitute charter party.

25.    Therefore, Plaintiff's damages for lost earnings equal ($190,074.00 - $41,754.00) $148,320.00, in addition to the claim for demurrage of $187,152.78.

26.    In accordance with the Charter Party contract, disputes between the parties are to be submitted to arbitration in London with English law to apply.

27.    Plaintiff will initiate arbitration in London after the commencement of this action and jurisdiction is obtained over Defendant.

28.    This action is brought in order to obtain jurisdiction over Defendant and to obtain security for Plaintiff's claims and in aid of arbitration proceedings.

29.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party.  As best as can now

be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing party:

| | | |
|---|---|---|
| A. | Principal claim – | |
| | Load port demurrage: | $187,152.78 |
| | Lost earnings: | $148,321.00 |
| B. | Estimated interest on claim -<br>3 years at 7.5% compounded quarterly: | $83,773.35; |
| C. | Estimated arbitration costs: | $25,000.00; |
| D. | Estimated attorneys' fees and expenses: | $70,000.00 |
| **Total:** | | **$514,247.13** |

30.    The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within the District which are believed to be due and owing to the Defendant. *See Affidavit of Nancy R. Siegel annexed hereto as Exhibit "1."*

31.    The Plaintiff seeks an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any assets of the Defendant held by any garnishees within the District for the purpose of obtaining personal jurisdiction over the Defendant and to secure the Plaintiff's claim as described above.

   **WHEREFORE**, Plaintiff prays:

JUDGE CASTEL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

'08 CIV 6514

----------------------------------------------------------------X

BRUNEL SHIPPING CO.,

              Plaintiff,

    - against -

PT SAMUDRA SRIWIJAYA SUKSESINDO,

              Defendant.

----------------------------------------------------------------X

08 Civ.

ECF CASE

RECEIVED
JUL 2 2 2008
U.S.D.C. S.D.N.Y.
CASHIERS

## VERIFIED COMPLAINT

Plaintiff, BRUNEL SHIPPING CO. (hereafter referred to as "Plaintiff"), by and through

its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the

Defendant, PT SAMUDRA SRIWIJAYA SUKSESINDO (hereinafter referred to as

"Defendant"), alleges, upon information and belief, as follows:

    1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333. This matter also arises

under the Court's federal question jurisdiction within the meaning of 28 United States § 1331

and the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards

(9 U.S.C. § 201 *et seq.*) and/or the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*).

    2.      At all times material to this action, Plaintiff was, and still is, a foreign corporation,

or other business entity, organized under, and existing by virtue of the laws of Liberia.

    3.      At all material times to this action, Plaintiff was the owner of the motor vessel

"LIQUID SUCCESS" (hereinafter the "Vessel").

    4.      Upon information and belief, Defendant was, and still is, a foreign corporation, or

other business entity, organized under, and existing by virtue of foreign law.

5.      Pursuant to a fixture for a charter party contract dated April 14, 2008 ("Charter Party"), Plaintiff chartered the Vessel to Defendant for the carriage of palm oil products ("the cargo") for the short voyage between one safe port/berth in Batam, Indonesia and one safe port in Zhanjiang, China.

6.      The Charter Party provided demurrage was to accrue at $14,000 per day/prorata

7.      In accordance with the Charter Party, the Vessel arrived at the load port, Batam, at 12:36 p.m. on April 18, 2008 and tendered its Notice of Readiness to Defendant.

8.      However, Defendant failed to provide the cargo for loading and/or details with respect to loading in the future.

9.      As Defendant was aware, demurrage charges began to accrue at 8:30 p.m. on April 23, 2008.

10.      By April 26, 2008, the Charter Party cancelling date, Defendant had still failed to provide any loading instructions or information concerning cargo readiness, ignoring repeated requests from Plaintiff.

11.      On May 6, 2008, Plaintiff informed Defendant that unless a schedule was provided before May 7, 2008, Plaintiff would have no alternative but to have the Vessel sail from Batam, Indonesia.

12.      Defendant failed to respond to Plaintiff's communication.

13.      Thus, on Plaintiff's direction, the Vessel sailed from Batam at 5:30 a.m. on May 7, 2008.

14.      Defendant's conduct in failing to make the cargo available for loading at Batam and/or in failing to perform the charter within such time that would not frustrate the commercial

purpose of the Charter Party constitutes a repudiatory and/or renunciatory breach of the Defendant's obligations under that contract.

15.     Plaintiff clearly and unequivocally accepted Defendant's repudiatory and/or renunciatory breach on or about May 7, 2008 by having the Vessel leave Batam.

16.     Plaintiff further sent written confirmation of its acceptance of Defendant's repudiatory and/or renunciatory breach on or about June 1, 2008.

17.     As a result of Defendant's repudiatory and/or renunciatory breach of the Charter Party as set forth below, Plaintiff has and will continue to suffer damages in the principal amount of $335,474.00, exclusive of interest, arbitration costs and attorney's fees.

18.     While waiting for Defendant's instructions from April 23, 2008 at 8:30 p.m. to May 7, 2008 at 5:20 a.m., when Plaintiff left Batam, demurrage charges accrued for Defendant's account in the amount of $187,152.78.

19.     In addition to load port demurrage, Plaintiff incurred damages for lost earnings. That is, the difference between the net freight Plaintiff would have earned during the period of the Charter Party with Defendant, had it properly performed instead of repudiated on May 7, 2008, and the net freight actually earned during that same period under a mitigation or substitute charter party.

20.     Had the Defendant not repudiated the Charter Party and/or had the Defendant properly performed from 5:30 a.m. on May 7, 2008, the Vessel would have been employed up to 8:00 a.m. on May 19, 2008.

21.     In particularly, under the Charter Party with Defendant, Plaintiff would have earned (net) freight of $190,074.00 for the period running from 5:30 a.m. on May 7, 2008 (the

time the Vessel left Batam) to 8:00 a.m. on May 19, 2008 (the date the charter would have ended).

21.    Instead, after sailing for Batam, the Vessel was ballasted to Singapore awaiting orders, and eventually was fixed for substitute employment with another company, non-party Pacific Inter-Link.

22.    The Vessel earned nothing until 1:30 a.m. on May 15, 2008, when the substitute charter began, and then earned (net) freight of $265,229 over a 27 day period to June 11, 2008.

23.    Starting at 1:30 a.m. on May 15, 2008, under the substitute charter party, the Vessel therefore earned time charter hire equivalent earnings of $9,788.00 per day for the 4.27 period to 8:00 a.m. on May 19, 2008, when the Vessel would have otherwise completed the charter with Defendant  Thus, Plaintiff earned a total of $41,794.76 during the 4.27 day period under the substitute charter party.

25.    Therefore, Plaintiff's damages for lost earnings equal ($190,074.00 - $41,754.00) $148,320.00, in addition to the claim for demurrage of $187,152.78.

26.    In accordance with the Charter Party contract, disputes between the parties are to be submitted to arbitration in London with English law to apply.

27.    Plaintiff will initiate arbitration in London after the commencement of this action and jurisdiction is obtained over Defendant.

28.    This action is brought in order to obtain jurisdiction over Defendant and to obtain security for Plaintiff's claims and in aid of arbitration proceedings.

29.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party. As best as can now

be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing party:

| | | |
|---|---|---|
| A. | Principal claim – | |
| | Load port demurrage: | $187,152.78 |
| | Lost earnings: | $148,321.00 |
| B. | Estimated interest on claim -<br>3 years at 7.5% compounded quarterly: | $83,773.35; |
| C. | Estimated arbitration costs: | $25,000.00; |
| D. | Estimated attorneys' fees and expenses: | $70,000.00 |
| **Total:** | | **$514,247.13** |

30.    The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within the District which are believed to be due and owing to the Defendant. *See Affidavit of Nancy R. Siegel annexed hereto as Exhibit "1."*

31.    The Plaintiff seeks an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any assets of the Defendant held by any garnishees within the District for the purpose of obtaining personal jurisdiction over the Defendant and to secure the Plaintiff's claim as described above.

   **WHEREFORE**, Plaintiff prays:

A.     That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint failing which default judgment be entered against it;

B.     That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds up to the amount of **$514,247.13** belonging to, due or being transferred to, from, or for the benefit of the Defendant, including but not limited to such property as may be held, received or transferred in Defendant's name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking/financial institutions and/or other institutions or such other garnishees to be named, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C.     That the Court retain jurisdiction to compel the Defendant to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

D.     That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

E.     That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court;

F.     That in the alternative, this Court enter Judgment against the Defendant on the claims set forth herein;

G.     That this Court award Plaintiff the attorneys' fees and costs incurred in this action; and

H.     That the Plaintiff has such other, further and different relief as the Court may deem just and proper.

Dated:        July 22, 2008
              Southport, CT

                         The Plaintiff,
                         BRUNEL SHIPPING CO.

                         By: _Nancy Siegel_____
                         Nancy R. Siegel
                         Patrick F. Lennon
                         LENNON, MURPHY & LENNON, LLC
                         420 Lexington Avenue, Suite 300
                         New York, NY 10170
                         (212) 490-6050 - phone
                         (212) 490-6070 – facsimile
                         nrs@lenmur.com
                         pfl@lenmur.com

7

## ATTORNEY'S VERIFICATION

State of Connecticut  )
                      )    ss.:    Town of Southport
County of Fairfield   )

1.    My name is Nancy R. Siegel.

2.    I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

3.    I am an associate in the firm of Lennon, Murphy & Lennon, LLC attorneys for the

Plaintiff.

4.    I have read the foregoing Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information

and belief.

5.    The reason why this Verification is being made by the deponent and not

by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now

within this District.

6.    The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiff and agents

and/or representatives of the Plaintiff.

7.    I am authorized to make this Verification on behalf of the Plaintiff.

Dated:        July 22, 2008
              Southport, CT


                                    _Nancy Siegel_____
                                    Nancy R. Siegel

8

JUDGE CASTEL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

'08 CIV 6514

---------------------------------------------------------------------X

BRUNEL SHIPPING CO.,

                Plaintiff,

  - against -

PT SAMUDRA SRIWIJAYA SUKSESINDO,

                Defendant.

---------------------------------------------------------------------X

08 Civ.

ECF CASE

RECEIVED
JUL 2 2 2008
U.S.D.C. S.D.N.Y.
CASHIERS

## VERIFIED COMPLAINT

Plaintiff, BRUNEL SHIPPING CO. (hereafter referred to as "Plaintiff"), by and through

its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the

Defendant, PT SAMUDRA SRIWIJAYA SUKSESINDO (hereinafter referred to as

"Defendant"), alleges, upon information and belief, as follows:

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333.  This matter also arises

under the Court's federal question jurisdiction within the meaning of 28 United States § 1331

and the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards

(9 U.S.C. § 201 *et seq.*) and/or the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*).

2.      At all times material to this action, Plaintiff was, and still is, a foreign corporation,

or other business entity, organized under, and existing by virtue of the laws of Liberia.

3.      At all material times to this action, Plaintiff was the owner of the motor vessel

"LIQUID SUCCESS" (hereinafter the "Vessel").

4.      Upon information and belief, Defendant was, and still is, a foreign corporation, or

other business entity, organized under, and existing by virtue of foreign law.

5.      Pursuant to a fixture for a charter party contract dated April 14, 2008 ("Charter Party"), Plaintiff chartered the Vessel to Defendant for the carriage of palm oil products ("the cargo") for the short voyage between one safe port/berth in Batam, Indonesia and one safe port in Zhanjiang, China.

6.      The Charter Party provided demurrage was to accrue at $14,000 per day/prorata

7.      In accordance with the Charter Party, the Vessel arrived at the load port, Batam, at 12:36 p.m. on April 18, 2008 and tendered its Notice of Readiness to Defendant.

8.      However, Defendant failed to provide the cargo for loading and/or details with respect to loading in the future.

9.      As Defendant was aware, demurrage charges began to accrue at 8:30 p.m. on April 23, 2008.

10.     By April 26, 2008, the Charter Party cancelling date, Defendant had still failed to provide any loading instructions or information concerning cargo readiness, ignoring repeated requests from Plaintiff.

11.     On May 6, 2008, Plaintiff informed Defendant that unless a schedule was provided before May 7, 2008, Plaintiff would have no alternative but to have the Vessel sail from Batam, Indonesia.

12.     Defendant failed to respond to Plaintiff's communication.

13.     Thus, on Plaintiff's direction, the Vessel sailed from Batam at 5:30 a.m. on May 7, 2008.

14.     Defendant's conduct in failing to make the cargo available for loading at Batam and/or in failing to perform the charter within such time that would not frustrate the commercial

purpose of the Charter Party constitutes a repudiatory and/or renunciatory breach of the Defendant's obligations under that contract.

15.    Plaintiff clearly and unequivocally accepted Defendant's repudiatory and/or renunciatory breach on or about May 7, 2008 by having the Vessel leave Batam.

16.    Plaintiff further sent written confirmation of its acceptance of Defendant's repudiatory and/or renunciatory breach on or about June 1, 2008.

17.    As a result of Defendant's repudiatory and/or renunciatory breach of the Charter Party as set forth below, Plaintiff has and will continue to suffer damages in the principal amount of $335,474.00, exclusive of interest, arbitration costs and attorney's fees.

18.    While waiting for Defendant's instructions from April 23, 2008 at 8:30 p.m. to May 7, 2008 at 5:20 a.m., when Plaintiff left Batam, demurrage charges accrued for Defendant's account in the amount of $187,152.78.

19.    In addition to load port demurrage, Plaintiff incurred damages for lost earnings. That is, the difference between the net freight Plaintiff would have earned during the period of the Charter Party with Defendant, had it properly performed instead of repudiated on May 7, 2008, and the net freight actually earned during that same period under a mitigation or substitute charter party.

20.    Had the Defendant not repudiated the Charter Party and/or had the Defendant properly performed from 5:30 a.m. on May 7, 2008, the Vessel would have been employed up to 8:00 a.m. on May 19, 2008.

21.    In particularly, under the Charter Party with Defendant, Plaintiff would have earned (net) freight of $190,074.00 for the period running from 5:30 a.m. on May 7, 2008 (the

time the Vessel left Batam) to 8:00 a.m. on May 19, 2008 (the date the charter would have
ended).

21.    Instead, after sailing for Batam, the Vessel was ballasted to Singapore awaiting
orders, and eventually was fixed for substitute employment with another company, non-party
Pacific Inter-Link.

22.    The Vessel earned nothing until 1:30 a.m. on May 15, 2008, when the substitute
charter began, and then earned (net) freight of $265,229 over a 27 day period to June 11, 2008.

23.    Starting at 1:30 a.m. on May 15, 2008, under the substitute charter party, the
Vessel therefore earned time charter hire equivalent earnings of $9,788.00 per day for the 4.27
period to 8:00 a.m. on May 19, 2008, when the Vessel would have otherwise completed the
charter with Defendant   Thus, Plaintiff earned a total of $41,794.76 during the 4.27 day period
under the substitute charter party.

25.    Therefore, Plaintiff's damages for lost earnings equal ($190,074.00 - $41,754.00)
$148,320.00, in addition to the claim for demurrage of $187,152.78.

26.    In accordance with the Charter Party contract, disputes between the parties are to
be submitted to arbitration in London with English law to apply.

27.    Plaintiff will initiate arbitration in London after the commencement of this action
and jurisdiction is obtained over Defendant.

28.    This action is brought in order to obtain jurisdiction over Defendant and to
obtain security for Plaintiff's claims and in aid of arbitration proceedings.

29.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party
under English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for
recovery of these items as part of an award in favor of the prevailing party. As best as can now

be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing

party:

| | | |
|---|---|---|
| A. | Principal claim – | |
| | Load port demurrage: | $187,152.78 |
| | Lost earnings: | $148,321.00 |
| B. | Estimated interest on claim - | |
| | 3 years at 7.5% compounded quarterly: | $83,773.35; |
| C. | Estimated arbitration costs: | $25,000.00; |
| D. | Estimated attorneys' fees and expenses: | $70,000.00 |
| **Total:** | | **$514,247.13** |

30.    The Defendant cannot be found within this District within the meaning of

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal

Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during

the pendency of this action, assets within this District and subject to the jurisdiction of this Court,

held in the hands of garnishees within the District which are believed to be due and owing to the

Defendant. *See Affidavit of Nancy R. Siegel annexed hereto as Exhibit "1."*

31.    The Plaintiff seeks an order from this Court directing the Clerk of Court to

issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental

Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any assets of the

Defendant held by any garnishees within the District for the purpose of obtaining personal

jurisdiction over the Defendant and to secure the Plaintiff's claim as described above.

**WHEREFORE**, Plaintiff prays:

A.      That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint failing which default judgment be entered against it;

B.      That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds up to the amount of **$514,247.13** belonging to, due or being transferred to, from, or for the benefit of the Defendant, including but not limited to such property as may be held, received or transferred in Defendant's name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking/financial institutions and/or other institutions or such other garnishees to be named, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C.      That the Court retain jurisdiction to compel the Defendant to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

D.      That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

E.      That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court;

F.      That in the alternative, this Court enter Judgment against the Defendant on the

claims set forth herein;

G.      That this Court award Plaintiff the attorneys' fees and costs incurred in this

action; and

H.      That the Plaintiff has such other, further and different relief as the Court

may deem just and proper.

Dated:          July 22, 2008
                Southport, CT

                                The Plaintiff,
                                BRUNEL SHIPPING CO.


                        By: _____
                            Nancy R. Siegel
                            Patrick F. Lennon
                            LENNON, MURPHY & LENNON, LLC
                            420 Lexington Avenue, Suite 300
                            New York, NY 10170
                            (212) 490-6050 - phone
                            (212) 490-6070 – facsimile
                            nrs@lenmur.com
                            pfl@lenmur.com

7

## ATTORNEY'S VERIFICATION

State of Connecticut  )
                      )    ss.:    Town of Southport
County of Fairfield   )

1.      My name is Nancy R. Siegel.

2.      I am over 18 years of age, of sound mind, capable of making this
Verification, and fully competent to testify to all matters stated herein.

3.      I am an associate in the firm of Lennon, Murphy & Lennon, LLC attorneys for the
Plaintiff.

4.      I have read the foregoing Verified Complaint and know the contents
thereof and believe the same to be true and accurate to the best of my knowledge, information
and belief.

5.      The reason why this Verification is being made by the deponent and not
by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now
within this District.

6.      The source of my knowledge and the grounds for my belief are the
statements made, and the documents and information received from, the Plaintiff and agents
and/or representatives of the Plaintiff.

7.      I am authorized to make this Verification on behalf of the Plaintiff.

Dated:      July 22, 2008
            Southport, CT


                        _Nancy Siegel_____
                        Nancy R. Siegel

8

# EXHIBIT "1"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
BRUNEL SHIPPING CO.,                                  :
                                                      :
                            Plaintiff,                :       08 Civ. __6514__
                                                      :
        - against -                                   :       ECF CASE
                                                      :
PT SAMUDRA SRIWIJAYA SUKSESINDO,                      :
                                                      :
                            Defendant.                :
-----------------------------------------------------------------------X

## AFFIDAVIT IN SUPPORT OF PRAYER FOR MARITIME ATTACHMENT

State of Connecticut    )
                        )       ss: Town of Southport
County of Fairfield     )

        Nancy R. Siegel, being duly sworn, deposes and says:

        1.      I am a member of the Bar of this Court and represent the Plaintiff herein. I am

familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the

issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the

Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

## DEFENDANT IS NOT PRESENT IN THE DISTRICT

        2.      I have attempted to locate the Defendant, PT SAMUDRA SRIWIJAYA

SUKSESINDO, within this District. As part of my investigation to locate the Defendant within this

District, I checked with the telephone company information directory, as well as the white and

yellow pages for New York listed on the Internet or World Wide Web, and did not find any listing

for the Defendant.

        3.      I also checked the New York Department of State – Division of Corporations' online

database which revealed that there are no listings for the Defendant

4.    I submit based on my due diligence investigation conducted in good faith that that the Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

5.    Upon information and belief, the Defendant has, or will have during the pendency of this action, tangible and intangible property within this District and subject to the jurisdiction of this Court, held in the hands of in the hands of garnishees within this District, which are believed to be due and owing to the Defendant.

6.    This is Plaintiff's first request for this relief made to any Court.

**PRAYER FOR RELIEF FOR ORDER ALLOWING SPECIAL PROCESS SERVER**

7.    Plaintiff seeks an Order pursuant to Rule 4(c) of the Federal Rules of Civil Procedure, for an Order appointing Patrick F. Lennon, Kevin J. Lennon, Charles E. Murphy, Nancy R. Siegel, Coleen A. McEvoy or any other partner, associate, paralegal or agent of Lennon, Murphy & Lennon, LLC, or any process server employed by Gotham Process Servers, in addition to the United States Marshal, to serve the Ex Parte Order and Process of Maritime Attachment and Garnishment, together with any interrogatories, upon the garnishee(s), together with any other garnishee(s) who (based upon information developed subsequent hereto by the Plaintiff) may hold assets of, for or on account of, the Defendant.

8.    Plaintiff seeks to serve the prayed for Process of Maritime Attachment and Garnishment with all deliberate speed so that it may be fully protected against the potential of being unable to satisfy a judgment/award ultimately obtained by Plaintiff and entered against the Defendant.

9.    To the extent that this application for an Order appointing a special process server with respect to this attachment and garnishment does not involve a restraint of physical property, there is no need to require that the service be effected by the Marshal as it involves simple delivery of

-2-

the Process of Maritime Attachment and Garnishment to the various garnishees to be identified in the writ.

## PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

10.    Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation, to be holding, or believed to be holding, property of the Defendant, within this District.  Obtaining leave of Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the Court amended Process seeking simply to identify other garnishee(s).

## PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

11.    Further, in order to avoid the need to repetitively serve the garnishees/banks, Plaintiff respectfully seeks further leave of the Court, as set out in the accompanying Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service of process throughout any given day on which process is served and throughout the next day, provided that process is served the next day, and to authorize service of process via facsimile or e-mail following initial *in personam* service.

Dated:          July 22, 2008
                Southport, CT

                                        _____
                                        Nancy R. Siegel

Sworn and subscribed to before me
this 22nd day of July 2008.

_____
NOTARY PUBLIC